The United States Court of Appeals for the 11th Circuit is now open to the Court of Law. Rondell Hall, God save the United States and His Honor. Please be seated. Welcome to all, and welcome to Judge Ed Karnes, who is joining us by Zoom. As Ed, we're always glad to have you here, however we can get you. All right, we're going to hear two cases today. Our first case up is United States of America v. Rondell Hall, 22-10230. Mr. Moore, you have reserved five minutes for rebuttal, and you can get started when you're ready. Mr. Moore? Yes. Good morning. Good morning. May it please the Court. This is a case where we have a split as to decisions of the circuit pertaining to home confinement. In the incident case, I know you've read the briefs and you've read the cases and all, but in this case, Mr. Hall, after the district court judge gave him the maximum sentence on a revocation, a probation revocation, not, sorry, a supervisory release revocation, she gave him 24 months because it was a Class C felony involved. So we didn't argue with that. We're fine. The 24 months, we don't deem to be inappropriate. We're not arguing that point. But what we are arguing is the fact that in addition to giving him the maximum statutory sentence that he could have gotten, the judge also imposed home confinement. If you look at the letter of the statute under 18 U.S.C. 1863, it states that home confinement, and it basically reads that it can only be imposed as an alternative. That's in Section 4 of that particular statute. Now, the courts have varied on this. Two very distinct cases, and the government argued them as well. You have the Hager case, and I assume that you've read the Hager case. That's over in the Fourth Circuit. In the Fourth Circuit, when they looked at home confinement, they took the statute, but the statute, the way they interpreted it, made it very inconsistent with the statute itself. And you're relying on the Fifth Circuit. You're relying on Ferguson, correct? Right. We're looking at the Fifth Circuit, and we're going to look at Ferguson. Well, let me ask you a question about Ferguson. Yes, ma'am. What about the fact that the Fifth Circuit, after Ferguson, and U.S.V. where, in the concurrence, the judge said, I think that Ferguson was wrongly decided. How do you address that? Just it's all on an interpretation of the statute, because the statute isn't clear. If the statute isn't clear, and the court has not given out a published opinion that says, these are the ways we're going to consider these particular cases, it's guesswork. That's why it's different from jurisdiction to jurisdiction, because when the court is, I'm sorry, Congress itself passed this law, it doesn't say discretionary or anything like that. It says under Section 4 of it, you can only impose this under these circumstances as an alternative. It doesn't leave room for discretion. If anything that needs to happen, Congress will be the one. The court is not the legislator in this case. That's why it's guesswork. That's why there's nothing definite. That's why when Judge DuBose had this case, and the probation officer basically told the court, you can't impose your home confinement in addition to the maximum sentence. It's discretionary. Until Congress says you cannot substitute home confinement as a part of the sentence, then that's fine. Let them say that. They haven't done that. So if you read the letter of the law itself and its natural meaning, it says you can't combine the two. What about the fact that you're pointing to the statute and you're pointing to Section 4, which deals with home confinement, what about the fact that there is a time limit in Section 3, but there's no reference to a time limit in Section 4? Why doesn't that matter? In 3, because you got alternatives. Now, let's look at the McGrew case that the government cited. Your mandatory count of sentences, so if someone has a gun, brandished a gun, they have to get a seven-year sentence in addition to the regular sentence, and that's mandatory. All of this for what we're looking at, a supervised release revocation, we're looking at discretionary matters. All of this is discretionary. They did not have to lock him up. They could have given him some kind of other type of prison other than prison. But what they chose to do in this instance, in this discretionary, they chose to give him the maximum, and then in addition to that, even though Section 4 says only if the as an alternative there, and they combined the two. That goes back to Ferguson. Ferguson, we feel, got it right. But then again, Congress is the one that should be making this decision. They should be the one to clarify the statute. Regardless of what happens in this case, other jurisdictions will have their own opinion as to what that 3583 says, because Congress has not made it definitive what it is. So even though Ferguson has been challenged, that's fine. It's challenged. It's still discretionary with the jurisdiction. There is nothing ironclad here. Counsel, let me ask you this. Let me ask you this if I can. Did the district court proceed under paragraph 3 or 4 of 3583E? Which paragraph? It proceeded under 3. That's what I thought. All right. How much post release supervision term was left from the original imposition? Sort of muffled. I didn't quite hear. I'm sorry. He got sentenced to prison and supervised release thereafter, and then he violated the terms of the supervised release, did he not? Right. They made it part of the supervised release after giving him the maximum that he could have received under the statute. All right. Counsel, let me ask you this. He had served some of the supervised release term, had he not? He had not served. When we came into the court, he had not served any supervised release. This is the first revocation hearing that he had. Okay. All right. So, well, it's hard to have supervised release revoked unless you've been on supervised release, because by definition, you're violating the terms of supervised release, are you not? Maybe because I'm not quite, like I'm hearing the echo. He had not been on supervised release. The court did impose, as opposed to giving him a partial and then giving him home confinement, the court went the entire maximum and utilized the entire 24 months that he could have gotten. But that's what I'm saying. And then it comes back to 4, where 4 says as an alternative. You can't give him, if you look at the literal letter of the statute, the statute itself gives an alternative, one or the other. They chose to maximize him as opposed to splitting it up. If they had given him, say, anything less than 24 months, they could have put the balance of it on home confinement. That's fine. You're not violating anything. And, again, the jurisdictions differ on this, regardless of what this 11th Circuit decision is. Other jurisdictions may look at this entirely different. So how do you clear it up? Other than Congress making it definitive what occurs on a supervised release. Can you put home confinement in there as well? Can you do it? Because if you look at the letter of the law itself, this would appear you can't. That's why, if we look at this, at the letter of the law, as the statute so provides, then we should follow it, which says that you can't put those two together. You can't put home confinement and confinement at the same time. Let me ask you one final question, at least as far as I'm concerned. My colleagues may have other questions. Is there any practical difficulty, if we were to agree with you, in trying to determine if a court had imposed home confinement or supervised release? You could do home confinement. You could do supervised. Does it present practical difficulties, if we were to embrace your theory, that home confinement can only be as a substitute for incarceration and the time limits are going to apply? Are there any practical difficulties that would be presented to courts who would be trying to determine, is this simply supervised release or is this home confinement? Sometimes they start to look alike. Yeah. In that, if we looked at the guidelines, we know the guidelines, they're merely advisory. We know that. So when we look at what they offer under the guidelines. If the court look at a sentence, again, the ball will play the statute itself, and if the court says, all right, they can impose supervised release, we know they can't because the statute provides for that, for supervised release. But when you put that in the statute, it's clear already. You can do supervised release following even a sentence, as long as you don't reach that maximum on it and you don't exceed the statute. So you can have them both. You can have supervised release, which is fine. And the statutes are not unclear on that point. You can still have supervised release, and you can give a partial count of the sentence. If the statute says you can get up to 24 months, give them 10 months or whatever it is. I think what Judge Branch was trying to get you to address was the government argues that it's really hard to tell the difference between home confinement, on the one hand, and supervised release with special conditions, on the other hand. So, for example, if I were to sentence someone to supervised release, but require them during the period of that supervised release to wear an ankle monitor so that they were location tracked, would that be home confinement or would that be supervised release with special conditions? That's what the government argues, so could you respond to that? And what was interesting on those, because you got a litany of cases where they talk about due process and equating, like, confinement, home confinement, with non-home confinement, and when you're under the Bureau of Prisons and they have cognizance over you. If you look at it and the court comes out and says home confinement, the court didn't just come out and say, and as a condition of your release, I want you to be able to do this, I'm going to put a monitor on you or whatever. The court came and said this is home confinement and listed it as that. Not just putting limitations on it, but said this is home confinement. Your position would be something along the lines of there might be some theoretical or hypothetical case where it's hard to make that determination, but it's not this case because in this case the district judge specifically said she was sentencing this person to home confinement. I could see the nuances that could occur on it. Again, this is a congressional matter. They're the ones who clear it up, and Ferguson just makes a great deal of sense. It doesn't give an ambiguity. Like when you look at Hager. Mr. Moore, you've answered my question and you've still got five minutes for rebuttal, but I'm going to stop you right there. Thank you. Mr. Gray. Thank you, and may it please the Court. Scott Gray on behalf of the United States of America. This court should affirm the district court's decision to impose home detention as a condition of supervised release in this case. I would start, if I could, Judge Branch, with your question to my opponent, and that involved the practical difficulties of a narrow construction of when a court can and cannot impose home confinement. And there are really two practical difficulties I would highlight today. The first is that a narrow ruling for home confinement would unreasonably constrain a district judge's sentencing discretion and would essentially preclude the applicability of home detention for some of those defendants who may be most appropriate for that condition when they are released from imprisonment. The second practical problem is that it forces the line-drawing question that I think Judge Brasher got to, which is that it's often difficult to distinguish home detention as an isolated or abstract principle from other conditions a court may impose at the time of sentencing. Looking at a district court's sentencing discretion, there really are three — there are a multitude of decisions a district judge has to make at the time of sentencing. There are three questions that bear in some respect on this appeal. The first is, if imprisonment is available, should the court impose imprisonment, and if so, for how long? Here, the defendant has agreed that the 24-month sentence of imprisonment was appropriate in this case. The second question, then, is supervised release available following that release from imprisonment? Here, the defendant has not challenged that the district court could, as a matter of its discretion, impose a term of supervised release after that term of imprisonment. And then the third question — Counsel, let me stop you there. I'm not sure that concession is well thought out. We're talking about 3583E, are we not? Your Honor, I think it's a bit more comprehensive than that. I recognize it's unclear from the briefing, but the way I would draw up the statutory analysis is that in 3583E3, the court can revoke a defendant's term of supervised release and impose a term of imprisonment up to two years for this violation. Then — Correct. Then, under Section 3583H, the court can impose a term of supervised release, less any term of imprisonment that's been imposed. In this case, my recollection of the record is similar to Hall's in that this was the first revocation. So as I read it, there's, I think, a three-year term of revocation that could be imposed. 36 minus 24 is 12. The court could impose 12 months of supervised release. Then there is the third sort of attendant question, which is, what conditions can the district court impose when the court imposes that additional term of supervised release under 3583H? And then I think the court looks to 3583D, which then incorporates, by reference, the probationary conditions in 18 U.S. Code Section 3563B. And then the condition that's at issue here is the discretionary condition, I believe it's 3563B-19, which involves home detention specifically. So I recognize that that statutory analysis gets a little bit complicated. But in looking at it, Can I ask you a question? I think that's very helpful. Thank you. So how do you read 4, so E4? So, I mean, this is, from what I can tell, maybe I'm wrong, but this is the provision of the statute that actually gives the district court the ability to impose these restrictions, to impose monitoring by telephone or electronic signaling devices. Am I right about that, that this is the provision that gives the authority to the district court to do it? So I think that's part of it. The way I read 3583E is that when a defendant violates his conditions of supervised release, the district court has different options. One is imprisonment. One is imposing home detention. The way I read 3583E4, when Congress said that home detention only may be imposed as an alternative to incarceration, that what Congress meant is that if there is a separate requirement elsewhere to provide imprisonment or to provide some other sanction, home detention doesn't cut it for those purposes. Yeah, I guess my question is where in the statute, and I mean, maybe this is a stupid question, but where in the statute does it say that a district court can require electronic monitoring except for in E4? So I think what I was getting at in my prior analysis is that if the court goes through 3583H and then to 3583D, 3583D outlines the different conditions that a court may or must impose as conditions of supervised release, and then it incorporates the probationary standpoints in 3563B. And so I think that's the statutory analysis is that once the court unpacks those different layers of the onion, as you will, you then get to all of those conditions in 3563B. I believe it's important because if under Section 3583H a court can impose a term of supervised release afterwards, it naturally follows that a district judge should have broad discretion to decide what conditions are appropriate at that point. Because on alternative reading, a court would potentially be limited to what was imposed previously at the initial sentencing, and that makes relatively little sense when a defendant has violated his conditions of release and has shown a need for increased monitoring or oversight by the court. Hull's case actually is a good example of why the district court's sentencing discretion at revocation should be broad. This defendant egregiously violated his conditions of release. He pointed a gun at a girlfriend and was a child nearby from a hotel balcony or ledge after having a previous firearm conviction. Yeah, there's no question about that. So just explain to me again, maybe, where E-4, under your theory, would have some function. What would it do? So what I read 3583E-4 to do is so, for example, if the court looks at 3583G, there are certain violations of release where Congress has said a court should revoke a defendant's term of supervised release and impose a term of imprisonment in those circumstances. What I read Congress to be saying in 3583E-4 is that when Congress created home detention in that context as an alternative to incarceration itself. Therefore, if Section 3583G requires imprisonment, a court could not functionally satisfy that statute by then imposing home detention because home detention only is an alternative to supervised release. I also think it's a record of the statute. Okay. I've lost you on that, and maybe I'm just confused. So 4 says that a district court can order the defendant home confinement, except that an order under this paragraph may be imposed only as an alternative to incarceration. So what is 4 if a district court under 3563 can already impose home confinement, right, as a condition of supervised release? What is it that 4 gives a district court the authority to do? Are you saying that it gives the district court the authority to order home detention in place of required imprisonment? Is that what you're saying? No. I think 3583E as a whole is providing the different options a district court has to address a violation of supervised release. One of those options in 3583E3 is imprisonment. Another option is home detention. So the court could say to address this violation of your conditions of release, I'm going to sentence you to a period of home detention in some respect. I'm going to enter an order of home detention in your case. A court cannot do that, however, if there's another statutory premise that requires actual imprisonment. 3583G requires that. I agree with you on that. That makes perfect sense. Then what does it mean when E4 says, except that an order under this paragraph may be imposed only as an alternative to incarceration? So I think what it's saying is that a court can enter an order of home detention and that that order is only an alternative to incarceration, meaning it is not incarceration itself. I think it's also a recognition, which is one of the things that the concurring opinion in Polydor got at, that home detention and imprisonment are at least facially similar in certain respects. They are restraints on liberty and they serve somewhat similar purposes. So you're reading that section to just say that an order under this paragraph is not incarceration. That's the way you're reading it? That's correct. Okay. The problem I'm having with that is that it limits, the way that phrase reads is it limits the district court's authority to impose home detention because it says, except that an order under this paragraph may be imposed, telling the district court, you can only impose this as an alternative to incarceration. Your reading seems to just ignore that. I mean, you impose no limit on the district court's ability to impose home detention. I guess maybe the better way to ask this is what limit is there on the district court's authority to impose home detention under E-4 in your reading? Absolutely. The limit is section 3553A. So any sentence that's imposed for revocation. So there is no limit that's imposed by the language except that an order under this paragraph may be imposed only as an alternative to incarceration. I mean, that's the way you're reading it? That's what I see the fundamental issue in the case to be is a court always is an exercise of discretion by the sentencing factors in section 3553A. Therefore, a condition or a sentence must be justified by those factors. I think the question here is, did Congress intend to impose additional limitations beyond the section 3553A factors? And the United States' position is no, Congress did not. Congress merely meant to reinforce that home detention is not incarceration itself. And that's not what they said, right? I mean, they could have said period after signaling devices and then said an order under this paragraph is not incarceration or does not count for incarceration or shall not be considered imprisonment or anything like that. But instead, they said an order under this paragraph may be imposed only as an alternative to incarceration. I mean, is there any way under your theory that we can give that any meaningful reading whatsoever? Yes. And I think then Judge O, and I believe it's now Judge Richmond and Polydor, does that to a point and explains that this was intended to emphasize to district courts the significance of imposing home detention, that it is a level of restraint that is similar in some respects to imprisonment in and of itself. But I think the important thing for the Court to do is to read this language as a whole and that the word alternative doesn't in and of itself signify mutually available choices. There are frequent occasions when only one alternative may be available. So, for example, if I were walking to court this morning and I said the Forsyth Street entrance was closed, so I had to use the Poplar Street entrance as an alternative. In that instance, only one alternative was available, the Poplar Street entrance as the alternative. And when Congress. You can't go through both at the same time, right? That's the whole point. You're saying that you can do both at the same time, but the nature of an alternative is that you have to pick one. I'm saying that they. I don't believe that you have to pick one either. They can work together. Home detention has. Both doors at once. No. In my example, I suppose you can't. But I think the point. Can you give me an example of the use of alternative where you can do both at the same time? I think this is a fitting example. I recognize I can't. I'm struggling to come up with one. I don't think there is one. But. But I think. Well, I think the example I would give is something akin to this. A football and a Frisbee are alternatives. They serve similar purposes. They fall through the air. They can. They can often be substituted for one another. And I believe that, for example, someone were to say, we're going to play football today and someone brought a Frisbee. They wouldn't naturally view that as bringing a football. But if you said, bring a football and a Frisbee and we'll play with both, I think playing with both of those alternatives makes sense in that example. I don't believe that it inherently means that you're only selected with one choice. I would also draw a contrast in that respect to the guidelines. I know that the guidelines, of course, are advisory and it's not the central issue here. But if the Court looks, for example, at 5C1.1e of the guidelines, the sentencing commission actually went further. And it has a general admonition in Section 5F1.2 about home detention being a substitute for imprisonment, which is similar to the statute. But then in addition, the sentencing commission laid out a schedule of alternative punishments, a schedule of alternative sanctions. And I submit that if the statute and if that general position in the guidelines means what the Court might be suggesting, 5C1.1 is unnecessary altogether. There's no need to lay out when, essentially, home detention may be a choice, may be an actual choice with respect to subbing out incarceration if the statute and if those other general principles already mean the same thing. And — Can I ask you, it's been a while since I've done a revocation. Can you remind me, and I think the law is, at least the way I read it, may be unclear on this, but what happens, so he's served his two years in prison. He gets out. He's got home confinement. He violates a condition of home confinement, you know, whatever he does. He cuts his ankle monitor off or whatever. He comes back, and he's revoked again. What happens then? Can he get two more years imprisonment? That's — but that's my understanding. There are different cutoffs within Section 3583 that do cap the imprisonment. But I believe that now, under the current iteration of Section 3583, that imprisonment maximum is per violation. That also, I would simply note, is a distinction between home confinement and incarceration. In this event, if the defendant violated that condition, the remedy would be to go before the district court, and the district court would decide what sanction is appropriate for that as opposed to the Bureau of Prisons deciding it. And with that — Okay. You're right. He would be revoked again. He would get — punishment of revocation, some additional period of imprisonment, and then he would get what? A little — I mean, whatever would be — whatever was left on his supervised release from his first revocation? The court would find, by preponderance of the evidence, that the defendant has violated his release conditions. The court then would determine an appropriate sanction up to the maximum prison sentence available per violation of supervised release. And with that, if there are no further questions before the court, I thank the court for its time and ask that it affirm. Thank you. Thank you, Mr. Gray. Mr. Moore, you have five minutes left for rebuttal. Thank you. The conversations that we're having now shows you just the problem because what Congress has legislated and how different jurisdictions have interpreted that legislation. But again, if we look at the letter of what Congress has said, there would be no guesswork amongst the jurisdictions. The law clearly says that home confinement is an alternative and it states when you could use home confinement. It's clear. In the case that the government itself cited in Hager, Hager twisted 3583 like a pretzel. But in the dissent in Hager, and this is a case where the gentleman got an initial violation. He could have gotten the full two years, but he didn't. The court only gave him six months of home confinement. Once they gave him that six months of home confinement, he once again violated the terms of his supervised release. The court there allowed him to be maxed out with another 23 months, well, not totally maxed out, but 23 months of supervised release of imprisonment, which went over the threshold of the 24 months. And the court said this, the court said we used that six months as confinement because under 3583, I think that's six or seven, you could then give a new supervised release if you did not give him, but it had to be a condition. First, the person had to be confined. It had to be confinement first, and then they could do a new supervised release. So in Hager, they treated that initial six months of home confinement as confinement so that they could give him a new supervised release, I think it's H if I'm not mistaken. And the sense here, how can you do that? How can you treat home confinement as confinement in order so you could give him a new supervised release under the new violation? It's inconsistent. You can't treat it as confinement one time and then don't treat it as confinement the other. But following the letter of the law, as Ferguson points out, Ferguson made totally sense, even though he said that people are digressing from Ferguson maybe did it wrong, again, because it's discretionary. Everybody's trying to interpret the statute and giving it their own spin as opposed to taking what it says literally. Literally, it says you cannot impose home confinement except as the alternative. And if you're going to give someone the maximum sentence, you've taken away that alternative. You've made your choice. You've decided I'm going to maximize on giving two years. Now you're also going to take the alternative and add that into the mix? You can't do them both. And that's why Ferguson was saying it makes sense in order to look at the law, exactly what it is, what does alternative mean? And it means that either or, you're either going to max him out over here or you're going to give him home confinement, one or the other. We're merely saying we're not arguing with what the judge did as far as giving him 24 months. You read the record. His record was not the greatest in the world. So we didn't challenge that. But we did say that the court exceeded the statutory amount that Mr. Hall could have received there because they took the alternative. And he didn't even have to be sent to prison because the court had total discretion on this, what they wanted to do with him. But they chose the alternative of maxing him out and now they want to come back and say, now we're going to also use floor and add some more time to his sentence. Counsel, what was the maximum time of supervised release that could have been originally imposed? I think it was the three year on his conviction. Then how do you account in your argument for H which says when a term of supervised release is revoked, revocation, the court may include a requirement the defendant be placed on a term of supervised release after imprisonment. The length shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release. That would be 36 months. Less any term of imprisonment that was imposed upon revocation of supervised release, that would be 24 months, which is precisely what the court in this case did, 24 plus 12. Judge, what we have here, we're looking at the guidelines. No, I'm not looking at the guidelines. I'm looking at the statute. I'm one of those old-fashioned folks that thinks the guidelines can't override the statute. So tell me why in plain words of subsection H, does it refute your position? I've looked at that point as well, but the statute also says the maximum term that you can get for that Class C violation is 24 months. I'm confused. You're not challenging the year of supervised release, right? You agree that the district court could impose an additional year of supervised release after the term of imprisonment, right? Correct. You're just challenging the fact that during that term of supervised release, the defendant is required to be in home confinement, right? Repeat that. I'm sorry. You're just challenging that during the year term of the supervised release, which the district court could impose under H, that the defendant is confined in his house during that term. Right. H says that a year of supervised release can be imposed, but it doesn't say anything about home confinement, right? Correct. You can have supervised release. We're fine with that. It could, as the Honorable Judge has pointed out, he could have gotten up to, the statute allows three years of supervised release for that Class C violation that he did. He could have three years. But on supervised release, if I'm a district judge and I want to impose a condition on supervised release, I would look at Section 3563 for that, right, to find out what those conditions are? Okay. Am I right about that? I look at that. But, Your Honor, what I'm looking at is this, Your Honor. If the maximum that you can receive under the statute is 24 months, as far as confinement is concerned, and if the statute says on the floor about the alternative for home confinement, and you're violating what the statute itself says, and I understand supervised release, but whether or not it's exceeding what the statute allows as far as the confinement part of it, and if you can only have an alternative, either take the maximum for the punishment or take the home confinement, one or the other. That's clear. And they violated that particular condition. They say, I'm giving you more supervised release because we've gotten up to three years, but we're giving you additional punishment when the statute says either or alternatively. So let Congress clear that up, and we won't be having these differences amongst all of the jurisdictions, because each jurisdiction looks like the majority are following Ferguson. Or you've exceeded the scope of his question. I'm sorry. Thank you. Yes, ma'am. And thank you both.